Johnson, C. J. The writ issued in this case commanded the defendant to appear before this court on the 15th of Jan., A. D. 1849, and to show by what warrant he exercises and claims to hold, use, exercise, and enjoy the office and franchise of judge of the third judicial circuit in the State of Arkansas. The writ then avers that, by an amendment to the constitution of the State, the said office is made elective by the people of said circuit, and that thereby the election of the defendant thereto has been vacated, and set aside. The defendant, on the return of the writ, appeared and filed his response, in which he sets forth that, on the 9th day of December, A. D. 1846, he was elected to the office of judge of the third judicial circuit of Arkansas, by the General Assembly of said State, for the term of four years, and that, on the 11th day of the same month, he was commissioned and sworn into office by the governor of said State, and that under that commission he now exercises the said office of judge of the third judicial circuit. To this response the attorney general filed his demurrer, thereby admitting the truth of all the facts stated therein, and denying their sufficiency in law. The Legislature of this State, at its last session, adopted an amendment to the constitution, which, under the authority of that instrument, immediately became a part and parcel of it. The amendment is in the. following words, to wit: “The qualified voters of each judicial circuit in tills State shall elect their circuit judge.” It is contended, on the part of the State, that this amendment the instant it was ratified and engrafted upon the Constitution, ipso fado, ousted all the incumbents of the circuit bench, and worked a vacancy in each to be filled by the people of; the several circuits so soon as the Legislature should pass an act fixing the time and prescribing the manner of the election..- Iii order to deduce the legal effect and operation of the amendment, it will become necessary to have recourse to the constitution, and to examine it with the view of seeing how it stood before that amendment was engrafted upon it. The 7th section of the 6th article of that instrument, after declaring that “the General Assembly, by joint vote of both houses, shall elect the judges of the supreme and circuit courts, and that a majority of the whole number in joint vote shall be necessary to a choice,” further declares “the judges of the circuit court shall be at Fast twenty-five years of age, and shall be elected for the term of four years from the date of their commissions.” The first clause of the 8th section of. the sainé article also provides that “the judges of the supreme and circuit courts shall, at stated times, receive a compensation for their services to be ascertained by law, which shall not, be diminished during .the time for which they are elected.” Before I proceed to consider the effect of the amendment in question, I Will lay down what I conceive to be the proper rules by which to test the true sense and meaning of the constitution: 1st.. The constitution, like all other deeds or charters, is to be construed according to the sense of the terms used, and the intention of its authors. 2d. It is to be construed, says Judge Story, “as a frame of laws established by the people according to their own free pleasure and sovereign will.” 3d. It should receive a fair and liberal interpretation, so that the true objects of the grant may be promoted, and the government left in the fall and free exercise and enjoyment of all its rights, priviliges, and immunities, which are not expressed out of its ordinary and general powers, and declared by the sovereign will to be inviolate and supreme. If the .amendment so operated as to occasion a vacancy immediately upon its adoption, there being no express declaration to that effect, it can result alone from the fact that, in the transfer of the power of filling the office to the people of the several circuits, the entire foundation upon which the incumbent stood was overturned and utterly destroyed. How would such a construction comport with the obvious sense of the terms used and the manifest intention of the framers of the instrument: or, in other words, would it be a fair and liberal interpretation, and such an one as would be calculated to promote the true objects of the grant? If the amendment will bear such a construction as to allow other provisions of the constitution to stand without doing violence to any, it is then clearly permissible to put such a construction upon it. If the intention was to create vacancies, is it not fair and reasonable to suppose that words would have been employed directly and emphatically declarative of that purpose, and that no room would have been left for doubt or construction? I apprehend that such would have been the case. It would have been as easy to have declared that the offices should be vacated upon a particular day as to have framed the amendment. It cannot be presumed that language of a doubtful character would have been adopted had the intention been to remove any of the judges from office, as it must have been foreseen that in that event a contest would arise, and that the courts of the country would be called upon to settle the question. Judge Story says (1 Story's Com. on Con. U. S.) that “every word employed in the constitution is to be expounded in its plain, obvious, and common sense, unless the context furnishes some ground to control, qualify, or enlarge it. Constitutions arc not designed for metaphysical or logical subtleties, for niceties of expression, for critical propriety, for established shades of meaning, or for the exercise of philosophical acuteness or judicial research. They are instruments of a practical nature, founded on the common business of human life, adapted to common wants, designed for common use, and fitted for common understandings. The people make them, the people adopt them, the people must be supposed to read them with the help of common sense, and cannot be presumed to admit in them any recondite meaning or any extraordinary gloss.” If I should adopt this construction, and admit its applicability to the case before the court, what is the necessary and inevitable result? Is it possible to read the amendment, and at the same time direct the eye to the provisions fixing the constitutional term of the office without being irresistibly drawn to the conclusion that the former was not intended to have immediate effect, but that its action was designed to be postponed until a vacancy, or vacancies, should occur in some one of the modes indicated in the constitution, or by the actual expiration of the constitutional term ? The mere amendment itself cannot be said, in any possible view of the case, to produce a vacancy in the office; for all that could be claimed under it would be a mere naked power to be called into life and action when it should please the Legislature to pass a law fixing the time and prescribing the manner of putting it in operation. This is the strongest view that could be taken against the defendant, and this most clearly shows that it could not go into immediate operation. The distinction then that lies at the bottom of the whole matter is, that the amendment was not designed to act either upon the office or the incumbent during his constitutional term, but that the only end and object of it was to change the mode of exercising the power of filling the offices. It is argued that, inasmuch as the power to elect the circuit judges has been taken away from the Legislature and transferred to the qualified voters of the several circuits, therefore the people have resumed one of the sovereign powers of the government, and that by the mere act of resumption, or withdrawal, of the power, the office that had previously been filled by its exercise, was immediately vacated. To the correctness of this proposition, I cannot yield my assent. The power to fill the office of circuit judge is equally sovereign whether exercised by the people’s representatives, or by the people themselves, and, as a matter of course, the rights that attach themselves -to the officer upon the election, in either mode, must be identically the same. I regret to say that, after a most patient and laborious examination of the books, I have not been able to find a solitary adjudication that sheds the least glimmering of light upon the question before the court. This great and extraordinary dearth of authority is doubtless attributable to the circumstance that but few constitutions in the Union contain a similar provision to our own in respect to the mode by which it may be amended. The constitution of the State of Missouri contains a provision that is a perfect counterpart of ours, and the only question which has, as yet, arisen out of its exercise, relates to the power of the Legislature, sitting in their constitutional capacity, to make such an amendment as to oust a circuit judge by an express declaration that the office shall be vacant from a particular day expressed in the amendment. To this question the supreme court of that State responded in the affirmative, and declared the office vacant from- the day specified. The principle enunciated in that case cannot be said to have any analogy to the one involved here, as in that case there was an express declaration that the office should be vacated upon a particular day, whereas in this there is no similar expression, and in its absence the presumption irresistibly arises that such could not have been the intention of the framers of the constitution. It may be insisted that an amendment to the constitution, like a legislative act, in the absence of any declaration as to the time when it shall go into operation, is presumed to have been intended to have immediate effect. To this my answer is, that such a result does not, by any means, follow, because the act of the Legislature is perfect and complete in itself: whereas, the amendment merely confers the power to do an act, but that power cannot, by possibility, be exerted until it shall have received shape and mould by an exercise of legislative authority. It is contended that this construction is predicated upon the doctrine of vested rights and that under our form of government no man can acquire a vested right to a public office. I presume that no one would be less disposed to countenance the idea that a public office could become the subject of vested rights in the legal and technical sense of that term than myself; yet I respectfully submit that the conclusions to which I have arrived do not depend, in the remotest degree, upon such rights. If the amendment had, either by express words or by necessary implication, declared the office of the circuit judges vacated from a fixed period, the question would then have been directly presented, and would have been as promptly met and decided. If this view of the question be correct, it is clear that the respondent has shown sufficient authority to enable him to hold and exercise the office of circuit judge of the third judicial circuit of Arkansas for the term of four years from the date of his commission, and that therefore he ought to be discharged and go hence without day. I am, therefore, of opinion that William C. Scott, the defendant herein, be discharged and go hence, and recover his costs against the State of Arkansas. Walker,, J. The defendant has been called upon, by the State, to show by what warrant of authority he exercises the office of judge of the third judicial circuit in this State, and has answered that, on the 9th day of December, 1846, he was elected by the General Assembly for the term of four years, and, on the 11th of said month, he was duly commissioned and qualified, and entered upon the duties of his office. To this response the State demurred, and the defendant joined issue. The law arising upon this issue is presented for the consideration of the court. The solution of the whole question thus presented depends upon the construction and effect of the following amendment of the constitution: “ The qualified voters of each judicial circuit in the State of Arkansas shall elect their circuit judge.” The writ of quo warranto was issued by the State upon the suggestion that this amendment to the constitution vacated the office of judge of the circuit courts. For the defendant, it is contended that the effect of the amendment is to divest the Legislature of, and confer upon the voters of the several judicial circuits, the power to elect their judge. As the decision of this question depends upon the legal effect of the amendment and its propcr'construction,it becomes necessary to refer to the rules by which constitutions are interpreted. Judge Story says: “ 1st. The first fundamental rule in the construction of till instruments is, to construe them according- to the sense of the terms and the intention of the parties. 2d. Where its words are plain, clear and determinate, they require no interpretation, and it should therefore be admitted, if at all, with great caution, and only from necessity, either to escape from absurd consequences, or to guard against some fatal error. 3d. It is to be construed as a frame or fundamental law of government established by the people according to their own free pleasure and sovereign will.” Story's Com. on Con., 135, 136. These rules of construction are of high authority, have been adopted and approved by this court; (State vs. Ashley, 1 Ark. Rep., 279,) and, w'hen applied to the amendment under consideration, seem to my mind to leave but little room for doubt. The terms used in the amendment are surely too plain and unambiguous to admit of but one construction. Like most other constitutions, ouis deals in general language, and, in view of the changes constantly taking place, particularly in the south-western territory into which a tide of emigration has been pouring, could not anticipate the wants and necessities of the community for whose government it was formed, and, from necessity, its powers are expressed in general terms, vesting in the legislative department, as occasion may require, power to pass such laws as may be found necessary to give efficacy to the general grant. Such is decidedly the case in regard to this amendment; it depends directly upon the legislative enactment for its development,— was designed to confer upon the qualified voter’s of each judicial circuit the power to elect their judge, and has reference to no other subject. Can it be true then, as contended for, that this amendment vacates the office of judge ? The amendment is clear and explicit, and therefore needs no interpretation. The rule in such cases is, that you must look alone to the terms used to explain their meaning. Judge Story says that “ where the words are plain, clear, and determinate, interpretation, if at all, should be allowed with great caution, and only from necessity, either to escape some absurd consequence, or guard against some fatal evil.” Com. on Con., 136. Why the necessity for an interpretation of this amendment ? There is certainly no absurd consequence to escape, unless it be contended that it is an absurd consequence to allow the voters of the circuits to elect their judge: no fatal evil to guard against unless that be one, for the whole purpose of the amendment is to do this and nothing more. But, on the other hand, il this plain, unambiguous amendment is to be construed so as to vacate the office of circuit judge, let us see what absurd consequences and fatal evils will follow. It will, in effect, be to repeal that clause in the constitution which ordains that the circuit judges shall hold their offices for four years, and until their successors are elected and qualified, and by vacating the office will suspend the whole circuit court system for an indefinite period. Therefore, so far from resorting to interpretation to escape absurd consequences and fatal evils, it must be resorted to in order to produce them. Without either admitting the necessity or the propriety of resorting to interpretation to ascertain the meaning of an instrument so clear and definite as this is, for the purpose of further illustration, we will test it by the established rules in such cases. Story says all instruments are to be construed according to the sense of the terms and the intention of the parties. We have seen that nothing can be deduced from the sense of the terms relating even remotely to the office of circuit judge or to the incumbent, only so far as relates to the power to elect. In determining the intentions of the framers of the amendment, we must keep in view the constitution as it stood at the time the amendment was made, the evil to be remedied by the amendment, and the amendment proposed, by which the evil is to be remedied. No interpretation should be allowed which would conflict with any other provision of the constitution, or which is not absolutely necessary in order to give effect to the proposed amendment. On the contrary, such construction should be given as will, if possible, leave all the other provisions in the constitution unimpaired and in full force. Here the evil to be remedied was power conferred on the Legislature to elect judges: the remedy, to confer that power on the voters of the several circuits. These ends may be accomplished without violating any other portion of the constitution, and therefore no such construction should be tolerated. It has been contended with much earnestness that the power to elect circuit judges was a delegated power emanating from the people through their constituted agent, the convention: and that the same power, being vested in the Legislature sitting in convention on the amendment, has withdrawn this power from the Legislature and conferred it on the voters of the judicial circuits ; and inasmuch as the sovereign power which elected the judges was withdrawn from this agent who elected them, their power as judges necessarily ceased: in other words, that because the Legislature ceased to have power to elect judges, those which had heretofore been elected by that body must go out of office also. Plausible as this argument appears at first glance, upon closer examination it will be found, if logical in its structure, wholly incorrect in its premises. It is true that if the power which created the office had withdrawn it the office would have fallen, and, as a consequence, the incumbent would have ceased officially to exist, because, in that event, there would have been no office to fill. And it is likewise true that when the constitution transferred its power to elect judges from the Legislature to the voters of the circuits, it vacated their office as agents: but it by no means follows that because the power given an agent is revoked, his acts done in the fullness of that power are affected. True his power ceased, he could act no longer; all subsequent acts would be void. But no principle is better settled than that the acts of the agent, done in pursuance of his delegated authority before his power is revoked, are valid. The validity of a deed once executed in accordance with the power given, is not affected because the principal choose to change his agent; and it is equally clear that an election held by the Legislature before their power was revoked or transferred to other agents, (the voters of the’circuits,) remains just as valid as if no change had been made. The error in the premises consists in this: that, in laying the basis for an argument, the agent is made to assume the position which the office should. If the office had been withdrawn then truly the official power of the judge would cease; but neither the office nor the incumbent are affected by the change of agents to make future elections. As regards the time when this amendment is to take effect : As a general rule it is true that legislative acts, and perhaps some of the provisions of the constitution, take effect (in the absence of any stipulated time in the act) from their passage; and if this position be qualified so as to make the amendment take effect at the time which may be prescribed by law authorizing the voters of the circuits to hold elections, I shall not dissent from it. But if it is to be understood that a power is conferred upon the voters, instantly to be exercised by them, independent of legislative authority, whilst we recognize the existence of an organized civil government, I am at a loss to conceive how it is possible for these voters to exercise the powers thus conferred. Is it not much more reasonable to suppose that this amendment was made in direct reference to such legislation as might be made to give it effect. There are many provisions in the constitution like this: for instance, it is provided by the constitution that the qualified voters of each township shall elect a constable, yet surely no one would seriously contend that the voters of a township (portion of an organized State government) could, in the absence of all law for that purpose, under this constitutional grant, hold a valid election. It has been argued that, as the third judicial circuit, in which the defendant presides, has been re-organized, and its territorial limits now consist of a portion of several districts, the circuit is, for that reason, abolished. This question is not fully presented upon the issue now before this court; but, as the ground has been assumed and is so intimately connected with the question before the court, it may be well to examine it. The constitution confided the judicial power of this State to a supreme court, to circuit and county courts, and to justices of the peace. After ordaining that the judicial power should be thus distributed, it confided to the Legislature the power to lay off and establish circuits and elect the judges of the circuit courts; (Art. 6, Secs. 4, 7;) from which it will appear that the judicial power is confided to certain courts to be brought into existence by legislative will. The effect of this ordination is, that in the exercise of the power to establish courts, that body is limited to these as the courts to which judicial power shall be given, and by other provisions of the constitution each court is assigned its appropriate jurisdiction, leaving the Legislature unlimited in the exercise of its power either in respect to the district or the qualifications of the judge, only (since our late amendment to the constitution) that district is to be composed of contiguous counties, and that the judge elected to fill the office so created should be at least twenty-five years of age. In view of all the constitutional, as well as the legislative,, powers in giving existence to the circuit court system and establishing the courts, it is a matter not altogether clear whether they should be considered as having been established by the constitution or by the Legislature. I am of opinion, however, when the district is laid off, an office is thereby created, and provision at once is made to have it filled. When once filled the constitution, by vai’ious provisions, interposes its protection to the court with a view to render it, as far as practicable, independent of the popular branch of the go.vernment, so that whilst the office exists the judge is protected from legislative encroachment. But, so far as regards the office, the very nature of the trust reposed in the Legislature, as well as the necessity which induced the framers of the constitution to confide such power to the Legislature, strongly indicates that the power to create, to alter, or abolish, must, of necessity, be vested in that body. The circuits are laid off for public convenience, and may be enlarged, diminished, or abolished, when the public interest requires it. This point has been decided by the court of appeals of Kentucky. The decision is found in 4 Dana’s Rep. 522, Tesh vs. The Commonwealth. “ The constitution of Kentucky ordains that the judicial power of the commonwealth is vested in a supreme court established by the constitution and in such inferior courts as the general assembly may from time to time erect and establish.” In the exercise of the power conferred by their constitution, the Legislature of Kentucky established the city court of Louisville. Chief Justice Robinsoií, in delivering the opinion of the court in that case, said “there can be no objection to the constitutiohality of the city court of Louisville, which can, in any degree, be plausible, unless it be that which has been urged in this case, that the Legislature had no power to limit the duration of the court. But that objection cannot prevail. A court established by the Legislature may be abolished by legislation. The court of appeals being ordained and established by the constitution cannot be abolished by any other power than that of the people in convention; but all inferior courts, being created by the Legislature, must depend for the continuance of their existence on legislative will.” The principal difference between the constitution of Kentucky and ours is, that whilst our constitution limits the Legislature in the distribution of power to certain courts, the constitution of Kentucky gives an unlimited power to their Legislature. This decision settles the question that where the Legislature creates it can alter or abolish, and, from the striking analogy between that constitution and ours, has a strong bearing on the question whether the court is to be considered as having been established by' the constitution or by the Legislature. A different construction would be wholly inconsistent with the intention of the framers of the constitution. The power was evidently conferred upon that body because, being frequently assembled, it would be enabled, from time to time, as necessity required, not only to lay off and establish new districts, but alter or abolish such as had been established, so as to suit pub-ILc convenience and facilitate the due administration of the law. To assume that when a circuit was once established it could not be filtered, would be wholly at variance with the spirit and intention of the other provisions of the constitution, and would throw the circuit court system into confusion. Suppose all the circuits to be laid off at this time. If they become permanent, what is the effect of establishing a new county ? (This the Legislature may do.) The result must be that for each new county a circuit must be established, and under the constitution, before the late amendment, counties would have necessarily remained without circuit courts until five contiguous were established. This power then, of establishing, altering, and abolishing, must, of necessity, exist in the Legislature. Under our system of government office is derived, directly or indirectly, from the sovereign power of the State (the people), is held for the public good, and, whilst the incumbent is protected in his rightful exercise of it during the term for which he was commissioned, yet it is with this implied reservation that, when the public interest no longer requires the continuance of the office, it is not to be kept in existence to subserve his private interests. The doctrine of vested rights in office as against the State is not recognized as applicable to office here. But whilst I have said that the Legislature have the power to alter or abolish the circuits, and that when the office is abolished it is necessarily vacated, I am not to be understood as deciding that a mere alteration, or change, or re-modeling a district, necessarily vacates the office whilst its identity exists in fact. Such is not the effect of a change, however it may be attempted, whether by enlargement or diminution. As well might it be contended that, because one of the members was taken off, the body could not exist, or that to add an additional field destroys the identity and existence of the farm. It may become a matter of much doubt and perplexity to determine to what extent alterations may be made without destroying the identity of the circuit. Each case must be determined according to its own peculiar circumstances: no general rule can be made to apply. ,/\nd whilst the discretionary power is vested in ■ the Legislature, the constitution has thrown around the circuit courts such protection as will prevent this power from being so used as to encroach upon the judicial department by using this as a means of reaching an officer who may incur the displeasure of that body. I am, therefore, of opinion that the office of circuit judge was in no respect affected by the amendment: that the effect of the amendment of the constitution was simply to confer upon the qualified voters of the several judicial circuits the power to elect their judge at such time and in such manner as might be prescribed by law: that such election can only legally take place from time to time in districts where the office may become vacant by death or resignation, or where the term has expired for which the incumbent was elected: and, consequently,- that no valid election can be held in any district in which there is no vacancy. The defendant has shown sufficient authority to entitle him to exercise the office of judge of the third judicial circuit. The demurrer must be overruled, and the defendant recover costs.